U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**



**Signed July 31, 2007**

_____
**United States Bankruptcy Judge**

---

## THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | § | |
| | § | **MISCELLANEOUS PROCEEDING** |
| PHILLIP E. LAYER | § | **NO. 06-306** |
| | § | |
| | § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW AND
### ORDER FINDING  PHILLIP E. LAYER IN CONTEMPT OF COURT

The following constitutes the court's findings of fact and conclusions of law and

order concerning the court's April 5, 2007 Order to Show Cause Whether Phillip E.

Layer Should be Sanctioned Further for Possible Failure to Comply with (A) Order

Imposing Sanctions Entered on August 4, 2006, in Case No. 06-31258, and (B) Court's

Oral Rulings at the Hearing on July 24, 2006 ("Show Cause Order #2").  Mr. Layer filed

a Response to Show Cause Order #2 (the "Response") on April 26, 2007, and the court

held a hearing on Show Cause Order #2 on May 31, 2007.  Where appropriate, any

finding of fact that should more appropriately be regarded as a conclusion of law shall be

deemed as such, and vice versa.

## FINDINGS OF FACT

1.      The court has been dealing with the matter of Mr. Layer for over a year now.  As such, the court feels it is appropriate to include a brief history of this Miscellaneous Proceeding.

### I.      The June 2006 Show Cause Order

2.      On July 24, 2006, this court held a hearing on its Order Directing Attorney Phillip E. Layer to Appear and Show Cause Why he is Not Going Forward with the Representation of His Clients and Pursuing a Modified Plan as Desired by Clients (the "June 2006 Show Cause Order"), entered June 26, 2006, in connection with the Victor L. Humphrey and Juanita Humphrey Chapter 13 case, Case No. 06-31258.

3.      The court issued the June 2006 Show Cause Order because Mrs. Humphrey appeared at the June 22, 2006 prehearing conference on confirmation of her plan wanting to go forward, but Mr. Layer, the Humphreys' counsel, did not appear.

4.      At the July 24, 2006 hearing on the June 2006 Show Cause Order, Mr. Layer appeared representing himself and Thomas D. Power, Chapter 13 Trustee, appeared on his own behalf.  The court heard evidence proffered by Mr. Layer and Mr. Powers.  Both parties agreed that Mr. Layer intended to cease filing Chapter 13 petitions in the Northern District of Texas.

5.      Upon hearing representations and proffered evidence from Mr. Powers and Mr. Layer concerning Mr. Layer's failure to file appropriate paperwork in certain Chapter 13 cases, including the Humphreys' Chapter 13 case, the court ruled that Mr. Layer would be banned from appearing before the United States Bankruptcy Court for the Northern District of Texas for a period of one year.  Mr. Layer laid the blame for such

failings largely at the feet of his staff and/or contract legal research firm (one of such persons he represented to be an unlicensed J.D.).

6. The cases discussed at the July 24, 2006 hearing are as follows: Victor and Juanita Humphrey, Case No. 06-31258-SGJ-13; Stevon Scott, Case No. 06-30889-HDH-13; Armando Rodriguez, Case No. 06-31170-BJH-13; Tonia Edwards, Case No. 06-31190-SGJ-13; Shelia McLamore, Case No. 06-32287-HDH-13; and Frances Zepeda, Case No. 06-30845-SGJ-13 (the "Chapter 13 Clients").

7. At the conclusion of the hearing on the June 2006 Show Cause Order, the court also ordered that Mr. Layer disgorge his attorney's fees to the Chapter 13 Clients and that he cooperate in the orderly transition of his bankruptcy/debtor cases to substitute counsel. Specifically, Mr. Layer was required by the court to accomplish this transition within 30 days and provide a list of all of his debtor cases within 14 days to the court so that the parties could ensure the transition of counsel. An Order Imposing Sanctions was entered on August 4, 2006 (the "Order Imposing Sanctions").

8. Although at the conclusion of the July 24, 2006 hearing, Mr. Layer seemed to be in agreement with the court's ruling that he should be banned from practice before the bankruptcy courts of the Northern District of Texas for a period of one year, Mr. Layer, on August 7, 2006, filed a motion for reconsideration of the Order Imposing Sanctions. The Chapter 13 Trustee responded to Mr. Layer's motion for reconsideration and a hearing was held on October 4, 2006, and further evidence was adduced.

9. Specifically, the court heard the testimony of Mr. T. William McIntyre, who identified himself as Mr. Layer's contract paralegal and legal researcher. Mr.

McIntyre represented that he contracts with Mr. Layer regularly and has done so consistently for the past three and a half years.

10. Mr. McIntyre testified that he is the individual who assisted Mr. Layer in connection with the Chapter 13 Clients' bankruptcy cases and, specifically, that he spoke with and attended meetings with Chapter 13 Clients.

11. Mr. Layer also testified at the October 4, 2006 hearing in his own defense asserting, *inter alia*, problems with Mr. McIntyre's bankruptcy software and asserting that, essentially, every lawyer representing individual debtors was having trouble with the new bankruptcy code (that is, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005).

12. After considering the testimony presented and other evidence adduced, and upon consideration of argument of counsel, the court denied the motion for reconsideration in oral findings at the end of the October 4, 2006 hearing. An order to that effect was entered on October 5, 2006. No appeal of the October 5, 2006 order nor of the Order Imposing Sanctions was lodged by any party such that both orders are now final.

## II. Other Sanctions by Other Northern District of Texas Courts

13. Subsequent to the foregoing events, this court became aware that other courts in this district have sanctioned Mr. Layer for conduct remarkably similar to the conduct this court observed of Mr. Layer and his contract paralegal, Mr. McIntyre.

14. Specifically, United States District Judge Sam A. Lindsay sanctioned Mr. Layer for Rule 11 violations in connection with the civil action *Cedric Wayne Davis, et al. v. Wilmer-Hutchins Independent School District Board of Trustees, et al.*, Civil Action

No. 3:05-CV-0623-L, United States District Court for the Northern District of Texas.

Mr. Layer defended himself before Judge Lindsay by alleging, *inter alia*, that pleadings had been filed in Judge Lindsay's case by Mr. Layer's "over zealous staff" and by contractors employed by Mr. Layer, who had filed documents with the District Court without Mr. Layer's review. These sorts of defenses and representation are not entirely unfamiliar to this court, having heard such a defense from Mr. Layer in connection with his conduct before this court.

15.     Next, Mr. Layer was sanctioned a second time by the United States District Court for the Northern District of Texas – this time, Judge Jane J. Boyle – less than six months after Judge Lindsay's initial sanction order – in connection with the civil action *Sophia Graham v. Dallas Independent School District*, Civil Docket No. 3:04-CV-2461, United States District Court for the Northern District of Texas, Dallas Division. Judge Boyle also sanctioned Mr. Layer for misconduct before the court.

16.     The *Graham* case also appears to be similar to the cases this court examined at its July 24, 2006 and October 4, 2006 hearings in that the subject of Judge Boyle's Memorandum Opinion and Order Sanctioning Attorney Phillip E. Layer (the "Boyle Opinion") specifically "involves whether Layer turned his client's case over to a non-lawyer research firm and then lied about his actions to the Court." *See* Boyle Opinion, p. 1.[1] Judge Boyle found that Mr. Layer had engaged Mr. McIntyre and Mr. McIntyre's firm to initiate and sustain the case before her, causing significant

---

[1] Judge Boyle's case also involves allegations specifically relating to Mr. McIntyre being allowed to prepare and file legal papers on behalf of Mr. Layer's client, and Mr. McIntyre also testified before Judge Boyle in connection with her evidentiary hearing on possible Rule 11 violations. *See* Boyle Opinion, p. 5. "Put simply, the evidence revealed – despite Layer's protestations to the contrary – that Layer had engaged McIntyre's firm to draft and file the pleadings in this case and to handle client communications with little, if any, oversight from Layer or any licensed attorney." *Id.*

expenditures of time and money on the part of the defendant, and that Mr. Layer had blatantly misrepresented facts to the court in connection with the conduct of the case and that such falsehoods were "inextricably intertwined with his utilization of the McIntyre firm." *See* Boyle Opinion, p. 11.

17.     Judge Boyle found "that Layer [had] knowingly permitted or participated in the filing of frivolous pleadings, had abdicated his professional responsibility to his client, to opposing counsel, and to the Court by allowing non-lawyers to draft and file pleadings bearing his signature without an appropriate level of oversight, and had made false representations to [Judge Boyle]." *See* Boyle Opinion, pp. 11-12.

18.     This court finds noteworthy the fact that matters concerning Mr. Layer's actions before Judge Lindsay, Judge Boyle and this court were proceeding, at least for a time, concurrently.

19.     In his Response, Mr. Layer represents that at the time the cases were proceeding before Judges Lindsay and Boyle he was "experiencing multiple severe family problems and personal health problems" and that he was "totally overwhelmed," such that Judges Lindsay and Boyle had "found that [he] had overly relied upon his contract paralegal staff, and . . . had delegated matters to them which [he] should have handled or more closely supervised."  Mr. Layer represents in his Response that he now believes such findings by the District Court Judges to be "fundamentally correct," although he continued to maintain that he "did not purposefully or intentionally make any misrepresentations" to either Judge Lindsay or Judge Boyle.

20.     Mr. Layer also represented in his Response that he was financially unable to satisfy the monetary sanctions levied upon him by Judges Lindsay and Boyle.[2]

## III.     The State Bar of Texas

21.     On June 12, 2006, the State Bar of Texas issued a Fully Probated Suspension of Mr. Layer in connection with his actions in *Cedric Wayne Davis, et al. v. Wilmer-Hutchins Independent School District Board of Trustees, et al.* (Judge Lindsay's case discussed above).[3] Mr. Layer filed a Notice of Appeal to the Board of Disciplinary Appeals on July 6, 2006, but Mr. Layer represents in his Response that, for various reasons, he was unable to proceed with the appeal.

22.     Mr. Layer also represented at the May 31, 2007 hearing that he had, for a period of time, been administratively suspended from practice by the State Bar of Texas (for matters unrelated to client issues), but has since been reinstated.

23.     Mr. Layer further informed the court that there were still two grievances against him pending before the State Bar of Texas Grievance Committee involving a client Mr. Layer represented in a criminal matter, and another client he represented in family court matters.

## IV.     Post-October 4, 2006 Activities of Mr. Layer Before this Bankruptcy Court

24.     But while all of this information concerning sanctions levied on Mr. Layer by District Court Judges Boyle and Lindsay and the actions before the State Bar of Texas caused this court concern--in that much of it sounded strikingly similar to Mr. Layer's conduct and practice before this bankruptcy court--what ultimately caused this court to

---

[2] Judge Linsday sanctioned Mr. Layer the sum of $16,898, which represented the defendant's reasonable attorney's fees. Judge Boyle also sanctioned Mr. Layer the defendant's reasonable attorney's fees of $70,224.85.
[3] *Commission for Lawyer Discipline v. Phillip E. Layer*, No. D0060526997, Evidentiary Panel of District 06A, Grievance Committee (June 12, 2006).

enter Show Cause Order #2 were events relating to two bankruptcy cases: Eleno Madrigal, Case No. 05-85567 and Frances Zepeda, Case No. 06-30845.

25. On February 15, 2007, the Motion for Relief From Stay as to 3130 Odessa Street, Dallas, TX (the "Lift Stay Motion") filed by Nationstar Mortgage, LLC ("Nationstar") came on for preliminary hearing before this court. No response to the motion had been filed and Nationstar uploaded a default order, as is common practice before this court, but Ms. Zepeda appeared, pro se, at the hearing.

26. Ms. Zepeda represented to this court that she still believed her counsel to be Mr. Layer, despite this court's order that he assist in the transition of his debtor clients to new counsel, and that she had attempted to contact Mr. Layer but that he was no longer located at his office. So, in an effort to save her home, Ms. Zepeda appeared at the preliminary hearing herself. Mr. Layer did not appear. Because of Ms. Zepeda's appearance, the court set the Lift Stay Motion over for a final hearing.

27. At the February 15, 2007 hearing, Ms. Zepeda further represented that the last time she spoke to Mr. Layer, which was, she believed, in September of 2006, Mr. Layer represented to Ms. Zepeda that he was supposed to refund attorney's fees to Ms. Zepeda pursuant to the court's order, but that he did not have the funds to pay her at that time. Ms. Zepeda further represented that Mr. Layer asked her to sign an affidavit that he had, in fact, repaid her, but she declined to sign such an affidavit because he had not repaid her. Ms. Zepeda also represented to the court that, since the last time she spoke to Mr. Layer, she has been representing herself before the Chapter 13 Trustee and before this court.

28.     Because of Ms. Zepeda's representations at the February 15, 2007 hearing, this court became gravely concerned that Mr. Layer may have attempted to suborn a false affidavit from Ms. Zepeda; that Mr. Layer had not, apparently, refunded attorney's fees to Ms. Zepeda or, perhaps, other of the Chapter 13 Clients; that Mr. Layer may not have transitioned his debtor clients to other counsel as ordered; and that Mr. Layer may not have otherwise complied with this court's Order Imposing Sanctions and/or with the court's oral rulings at the hearing on July 24, 2006.

29.     After Ms. Zepeda's appearance before this court on February 15, 2007, the court's staff conducted an investigation concerning Mr. Layer's bankruptcy cases and found that Mr. Layer still appeared as counsel for the debtor on the docket sheets of the Victor L. and Juanita Humphrey case (Case No. 06-31258),[4] the Christine E. Esparza case (Case No. 06-30802), and the Frances Zepeda case (Case No. 06-30845).

30.     Furthermore, on November 9, 2006, as reflected by the Order Dismissing Case entered on December 12, 2006  in *In re Eleno Madrigal*, Case No. 05-85567, it appeared that Mr. Layer may have appeared before Judge Barbara J. Houser on the Chapter 13 Trustee's Motion to Dismiss for Eligibility in the Eleno Madrigal case in violation of this court's injunction against further practice before the United States Bankruptcy Court for the Northern District of Texas.

31.     Based upon the foregoing, the court issued Show Cause Order #2 to explore what appeared to be Mr. Layer's failure to comply with the Order Imposing Sanctions and this court's oral rulings of July 24, 2006.  Mr. Layer, Mr. McIntyre and

---

[4] The Humphreys' case docket sheet showed that attorney Gwendolyn Hunt also represents the debtors, and this court is aware of Ms. Hunt's participation in this case as counsel for the debtors in recent months. However, this does not excuse Mr. Layer from taking the necessary steps to terminate representation and appropriately transition the case.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER**          **PAGE 9 OF 25**

Mr. Powers were ordered to appear before this court to give evidence. A hearing on the April 2007 Show Cause Order was initially set for a May 10, 2007 hearing. Upon the request of Mr. Powers, the Chapter 13 Trustee, the matter was reset to May 31, 2007.

## V.      What the Court Found Out on May 31st

32.      So the court conducted a rather lengthy hearing on Show Cause Order #2 on May 31, 2007. Mr. Layer, Mr. McIntyre, and Mr. Powers all appeared as ordered. Also in attendance at the hearing were Ms. Frances Zepeda and her daughter, a former employee of Mr. McIntyre, Ines Zepeda.

### A.      Compliance with the Sanction Order, Generally

33.      Mr. Layer asserted that he felt he had totally complied with the court's orders and directives. Mr. Layer also represented to the court that he had just tendered his resignation from the bar of the Northern District of Texas, and that he intended also to tender his resignation from the bar of the Eastern District of Texas.

34.      Mr. Layer testified that he has recently passed the Series 3 Exam (the National Commodities Futures Exam) and is beginning to work as a commodity broker on commissions only. His income at present comes from, mostly, wrongful foreclosure cases and what he called "carry over" nonbankruptcy cases he is working on with Mr. McIntyre.

35.      Mr. McIntyre is not an attorney and has never attended law school. Although Mr. McIntyre admits to having been implicated in the proceedings against Mr. Layer before the State Bar of Texas, he asserts that he has been totally exonerated in every one of the matters. He asserts that the State Bar matters mostly involve disgruntled clients.

36.     Mr. McIntyre used to be a lobbyist and says that he met Mr. Layer through the law firm of Fulbright & Jaworski.  Mr. McIntyre has been doing legal research for 30 years and, though he admits to having been accused of practicing law without a license, he asserts that he has never represented himself to be a lawyer.

37.     The evidence before the court on May 31, 2007 reflects that Mr. Layer did not, in fact, totally comply with the Order Imposing Sanctions and the court's oral rulings of July 24, 2006.  Indeed, the testimony suggests that Mr. McIntyre attempted to comply with the court's order on Mr. Layer's behalf – much as this court suspects that Mr. McIntyre attempted to represent Mr. Layer's clients (at least by paper filings) before this court, and District Court Judges Lindsay and Boyle.

38.     Specifically, Mr. McIntyre testified that it was he who contacted the Chapter 13 Clients regarding the Order Imposing Sanctions and the requirement that Mr. Layer refund attorney's fees to them.  The Chapter 13 Clients, in fact, are all personal friends of Mr. McIntyre.

39.     Mr. Layer testified that either he or persons representing him contacted the Chapter 13 Clients and this court finds that it was, in fact, Mr. McIntyre who did all the contacting.  Mr. Layer did nothing in that regard.

40.     When asked specifically what he had done to comply with the order, Mr. Layer asserted that the gist of the order was that he was not to file any more bankruptcy petitions and he has not done so.  When asked with whom of the Chapter 13 Clients he had personally spoken, Mr. Layer said he could not recall names except for Ms. Frances Zepeda, who had been in the office to visit her daughter one day (as will be more fully explained herein).

41.     Regarding transitioning the Chapter 13 Clients to new counsel, testimony reveals that it was, again, Mr. McIntyre who gave the Chapter 13 Clients names of potential new counsel, not Mr. Layer.

42.     The court finds that Mr. Layer deferred totally to Mr. McIntyre to do what Mr. Layer was ordered to do himself.  Moreover, Mr. Layer not only violated this court's Order Imposing Sanctions and July 24, 2006 oral rulings by failing to properly transition his clients to new counsel, he violated his duty to his clients pursuant to Texas Disciplinary Rule 1.15(d).[5]

43.     Mr. Layer referred to various health problems and financial problems that, he asserts, prevented him from fully complying with the Order Imposing Sanctions and the court's July 24, 2006 oral rulings.  To his credit, Mr. McIntyre sought to help his friend and colleague, getting Mr. Layer into a treatment program and doing what he could do to ensure Mr. Layer's (and Mr. McIntyre's) clients were taken care of in the wake of Mr. Layer's disbarment from this court.

44.     But laudable as efforts to help a friend in need may be, the responsibility to comply with the Order Imposing Sanctions and the July 24, 2006 oral rulings was Mr. Layer's, not Mr. McIntyre's.  If Mr. Layer was having trouble complying with this court's orders and directives, Mr. Layer's remedy was not to, once again, rely too heavily on his paralegal, but to come to this court – a court of equity – and seek relief in the form of an extension of time or some other adequate remedy.  Mr. Layer, instead, did nothing.

---

[5] "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned.  The lawyer may retain papers relating to the client to the extent permitted by other law only if such retention will not prejudice the client in the subject matter of the representation."  Texas Disciplinary Rule of Professional Conduct 1.15(d).

**B.** **Refund of Attorney's Fees**

45.     Mr. Layer candidly admits that he did not refund any of the attorney's fees to the Chapter 13 Clients because he is, bluntly, broke and also because he has had certain undefined medical problems.

46.     The following attorney fee amounts were paid to Mr. Layer by the following individuals, and should have been refunded to such individuals by Mr. Layer:

      a.   Victor and Juanita Humphrey, $500.00

      b.   Stevon Scott, $0.00[6]

      c.   Armando Rodriguez, $224.35[7]

      d.   Tonia Edwards, $358.17

      e.   Sheila McLamore, $0.00[8]

      f.   Frances Zepeda, $0.00[9]

47.     At the hearing on May 31, 2007, Mr. Layer offered to execute promissory notes to the Chapter 13 Clients for the amount of attorney's fees to be repaid to each.

**C.** **Eleno Madrigal**

48.     At the hearing on May 31, 2007, Mr. Powers represented that although the Order Dismissing Case entered on the Eleno Madrigal matter represented that Mr. Layer appeared before Judge Houser on November 9, 2006, he cannot be sure that Mr. Layer did, in fact appear at the hearing.  Mr. Layer, for his part, denies appearing at the hearing.

---

[6] Mr. Layer represented that he was to receive $2,200.00 from Mr. Scott, but that Mr. Scott's case was dismissed and Mr. Scott paid no funds to Mr. Layer.  The Chapter 13 Trustee's office's records reflect no funds being paid to Mr. Layer in connection with Mr. Scott's case.

[7] Mr. Layer represented that he was to receive $1,700.00 from Mr. Rodriguez, but that Mr. Rodriguez's case was dismissed and he was not paid in full.  The Chapter 13 Trustee's records reflect that Mr. Layer received $224.35 in connection with Mr. Rodriguez's case.

[8] Mr. Layer and Mr. McIntyre represented that Ms. McLamore paid nothing to Mr. Layer.

[9] Mr. Layer testified, as more fully set forth herein, that he had taken attorney's fees from Ms. Zepeda in connection with a prior case, but that he represented Ms. Zepeda in Case No. 06-30845, her present case, pro bono.

The court finds that there is no conclusive evidence that Mr. Layer appeared at a hearing before Judge Houser on November 9, 2006 in the Eleno Madrigal case in violation of this court's order.

49.     However, other information concerning the Eleno Madrigal case came to light at the May 31, 2007 hearing, which shows either that Mr. Layer continued to operate in violation of the Order Imposing Sanctions and the July 24, 2006 oral rulings, or that Mr. McIntyre and his staff filed documents with this court under Mr. Layer's name without Mr. Layer's authorization or supervision.

50.     The Order Imposing Sanctions was dated August 3, 2006 and was entered by this court on August 4, 2006.  That order gave Mr. Layer thirty days to wind up his bankruptcy practice, which thirty days would have expired on September 3, 2006. Accordingly, pursuant to the Order Imposing Sanctions, September 3, 2006 was the last date on which Mr. Layer was authorized to practice law before the United States Bankruptcy Court for the Northern District of Texas.

51.     On September 13, 2006, the Office of the Chapter 13 Trustee received a fax from Mr. McIntyre's office of amended schedules A, D, E and an amended mailing matrix for Eleno Madrigal.  The fax represented that the amended schedules and mailing matrix would be filed that day.  A search of the court's docket sheet reveals that the amended schedules and mailing matrix were, in fact, filed on September 13, 2006 (docket entry number 42 in Case No. 05-85567).  The verification of mailing list attached to the amended schedules bears the electronic signature of Mr. Layer ("/s/ Phillip E. Layer")[10] on the signature line for the attorney, bearing the date of September 13, 2006.

---

[10] Section 8.1 of the court's Electronic Case Filing Administrative Procedures provides that submission of documents through the electronic filing system is the same as signing them for the purposes of Fed. R.

52. Docket entry number 43 in Case No. 05-85567, also from September 13, 2006, is Eleno Madrigal's amended preliminary plan, which also bears Mr. Layer's electronic signature.

53. Mr. McIntyre testified that the schedules and amended mailing matrix were filed by Mr. McIntyre's office on behalf of Mr. Layer. Mr. McIntyre testified that he would never file the schedules without Mr. Layer's authorization.

54. Mr. Layer timely filed a motion for reconsideration of the Order Imposing Sanctions on August 7, 2006, but failed to seek a stay of the Order Imposing Sanctions pursuant to Fed. R. Civ. P. 62(b). Accordingly, although Mr. Layer's motion for reconsideration of the Order Imposing Sanctions was pending as of September 13, 2006 when the amended schedules, matrix and plan were filed in the Eleno Madrigal case, the injunction prohibiting Mr. Layer from practicing before the United States Bankruptcy Court for the Northern District of Texas was in full force and effect since the order imposing such injunction, though challenged, was unstayed.

55. Accordingly, one of two violations occurred in the Eleno Madrigal case, though neither of them a violation the court first supposed to have occurred: either (a) Mr. Layer was, in fact, practicing before this court in violation of the Order Imposing Sanctions by filing pleadings in the Eleno Madrigal case, or (b) Mr. McIntyre was utilizing Mr. Layer's name to file documents in the Eleno Madrigal case without Mr. Layer's supervisions and full participation. Either way, this court's orders and the Texas Disciplinary Rules have been violated.

---

Bankr. P. 9011 and that neither the filing user nor any other party may knowingly permit or cause to permit a filing user's password to be used by anyone other than the filing user or an authorized agent of the filing user. *See* General Order 2003-01.2, *In the Matter of Electronic Case Filing*, United States Bankruptcy Court, Northern District of Texas, Dallas Division, July 14, 2003.

### D.     Frances Zepeda

56.     At the hearing on May 31, 2007, the court heard testimony from Mr. Layer, Mr. McIntyre, Ms. Frances Zepeda, and Ms. Ines Zepeda regarding the events surrounding the alleged requested affidavit concerning fees paid by Ms. Zepeda to Mr. Layer.

57.     The evidence revealed that Ms. Frances Zepeda, at some point after the entry of the court's Order Imposing Sanctions, visited her daughter, Ms. Ines Zepeda, who, although an employee of Mr. McIntyre, was working in Mr. Layer's front office. Ms. Frances Zepeda and Ms. Ines Zepeda were going out for lunch together.

58.     While Ms. Frances Zepeda was in Mr. Layer's office, Mr. Layer told Ms. Frances Zepeda that she needed to go down to Mr. McIntyre's office to sign an affidavit concerning fees paid by Ms. Frances Zepeda to Mr. Layer.

59.     Specifically, that affidavit was to reflect that Ms. Frances Zepeda had paid Mr. Layer fees in connection with an earlier bankruptcy case, but that she had paid him no fees in connection with Case No. 06-30845, the case in connection with which the court had ordered Mr. Layer to refund fees to Ms. Frances Zepeda.  Messrs. Layer and McIntyre wanted this affidavit in order to protect Mr. Layer from any suggestion that he had failed to comply with the Order Imposing Sanctions by failing to refund the fees from the earlier bankruptcy case.

60.     Apparently not understanding fully what Mr. Layer wanted of her, Ms. Frances Zepeda declined to go to Mr. McIntyre's office and declined to sign any affidavit.

61. The court finds that Mr. Layer did not attempt to suborn a perjurous affidavit from Ms. Frances Zepeda. Rather, the court finds that the incident described to the court on February 15, 2007 by Ms. Frances Zepeda, and further illuminated at the hearing on May 31, 2007 by the testimony of Mr. McIntyre, Mr. Layer, Ms. Frances Zepeda, and Ms. Ines Zepeda, was the result of a misunderstanding. The court finds no ill intent by any party in connection with the request of an affidavit from Ms. Frances Zepeda and in connection with Ms. Frances Zepeda's February 15, 2007 report of those events to this court; it was simply an innocent misunderstanding.

## CONCLUSIONS OF LAW

62. "[C]onsideration by a bankruptcy court of a civil contempt motion will encompass only two issues: whether the alleged contemnor knew of the order and whether he complied with it. Decision of these two issues would involve no determination of private rights under non-bankruptcy law. On the other hand, the issue of whether the alleged contemnor substantially complied with the underlying order may well raise questions as to the nature, contents, and meaning of the underlying order, whether the alleged contemnor knew of it, and whether his conduct complied with it, which questions are well within the special knowledge and expertise of the bankruptcy court." *Kellogg v. Chester*, 71 B.R. 36, 38 (N.D. Tex. 1987).

63. In order for civil contempt to be found by this court, the court must find by clear and convincing evidence that (a) a court order was in effect; (b) the order required certain conduct by the respondent; and (c) that the respondent failed to comply with the order." *In re LATCL&F, Inc.*, 2001 WL 984912. *3 (N.D. Tex. 2001) (*citing Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 400 (5th Cir. 1987)).

64. Clear and convincing evidence is the quantum of proof that leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question. *In re Senior Living Properties, L.L.C.*, 309 B.R. 223, 235 (Bankr. N.D. Tex. 2004). The clear and convincing evidence standard has also been defined as "that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *In re Cowboy Roofing, Inc.*, 193 B.R. 443, 446-47 (Bankr. E.D. Tex. 1996) (*citing In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992)).

65. "An alleged contemnor must have had knowledge of the order on which civil contempt is to be based. The level of knowledge required, however, is not high. Intent or good faith is irrelevant." *Kellogg v. Chester*, 71 B.R. at 38. "[I]ntent is not an element in civil contempt matters. Instead, the basic rule is that all orders and judgments of courts must be complied with promptly." *In re Unclaimed Freight of Monroe, Inc.*, 244 B.R. 358, 366 (Bankr. W.D. La. 1999). *See also In re Norris*, 192 B.R. 863, 873 (Bankr. W.D. La. 1995) ("Intent is not an element of civil contempt.").

66. For civil contempt of a court order, there need not be a showing that the conduct was willful so long as the contemnor actually failed to comply with the court's order. *In re All Trac Transp., Inc.*, 306 B.R. 859, 875 (Bankr. N.D. Tex. 2004) (internal citations omitted) (Felsenthal, J.).

67. In determining what sort of sanctions should be imposed for civil contempt, the court should consider (a) the harm from noncompliance; (b) the probable

effectiveness of the sanction; (c) the financial resources of the contemnor and the burden the sanctions may impose; and (d) the willfulness of the contemnor in disregarding the court's order." *Lamar Financial Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990) (*citing United States v. United Mine Workers*, 330 U.S. 258 (1947)).

68.     This court finds Mr. Layer in civil contempt of the court's Order Imposing Sanctions and in contempt of this court's oral rulings on July 24, 2006.  There is no question that (a) the Order Imposing Sanctions and this court's oral rulings on July 24, 2006 were in effect, that (b) the Order Imposing Sanctions and the court's July 24, 2006 oral rulings required certain actions by Mr. Layer, and that (c) Mr. Layer knew of the Order Imposing Sanctions and this court's oral rulings of July 24, 2006 and what they required of him (indeed he was present at the hearing on July 24, 2006 and negotiated with the court concerning the court's directives during that hearing, and he filed a motion for reconsideration of the Order Imposing Sanctions).  The evidence at the May 31, 2007 hearing showed that (d) Mr. Layer failed to comply with the Order Imposing Sanctions and the court's July 24, 2006 oral rulings.

69.     Specifically, Mr. Layer was (a) prohibited from filing any bankruptcy petitions in the Northern District of Texas for a period of one year from the entry of the Order Imposing Sanctions; (b) required to transition his present bankruptcy clients to new counsel within 30 days of the entry of the Order Imposing Sanctions; (c) prohibited from practicing before the United States Bankruptcy Court for the Northern District of Texas after thirty days from the entry of the Order Imposing Sanctions (allowing time for the transition of present bankruptcy clients to new counsel); and (d) disgorge and pay to the

Chapter 13 Clients all fees received from them and provide evidence of such repayment to the Trustee.

70. The record does not reflect that Mr. Layer filed any new bankruptcy petitions in the Northern District of Texas after the entry of the Order Imposing Sanctions.

71. Mr. Layer did not, however, transition his clients to new counsel. Instead, Mr. Layer permitted Mr. McIntyre to attempt to fulfill Mr. Layer's responsibilities to this court and Mr. Layer's ethical responsibilities to his clients in that it was Mr. McIntyre who provided the names of potential new counsel to Mr. Layer's clients. Mr. Layer asserts that he does not recall speaking to any of his clients except for Ms. Frances Zepeda as discussed above. Accordingly, the court finds that Mr. Layer failed to comply with the requirement that he transition his clients to new bankruptcy counsel, instead abdicating his responsibility to Mr. McIntyre.

72. The docket of the Eleno Madrigal case indicates that Mr. Layer continued practicing before this court after he was prohibited from further practice. Mr. McIntyre asserts that his staff filed documents bearing Mr. Layer's signature in the Eleno Madrigal case on September 13, 2006, ten days after Mr. Layer was to have ceased practice before this court. Mr. McIntyre testified that he would not file such documents without Mr. Layer's authority. The court believes Mr. McIntyre and, therefore, finds that Mr. Layer violated this court's order by practicing before this court on September 13, 2006 by way of filing amended schedules, an amended mailing matrix, and an amended plan on that date.

73.     As to the order to disgorge attorney's fees to the Chapter 13 Clients, Mr. Layer admits that he has not complied with the court's order because he has various medical problems and because he lacks the funds to reimburse his former clients.

74.     Mr. Layer and Mr. McIntyre offer this court excuses for Mr. Layer's failure to comply and assert that Mr. Layer had no ill will or wrongful intent.  But intent is not a factor in civil contempt.  Mr. Layer knew of the court's orders, he knew what was required of him, and he failed to comply with the orders.  He is, therefore, in civil contempt of this court.

75.     In determining what sort of sanctions should be imposed upon Mr. Layer by this court for his civil contempt, the court considers (a) that Mr. Layer's former clients have been harmed by having paid funds for inadequate services from Mr. Layer and have not been repaid such funds; (b) that Mr. Layer's former clients have been harmed by not having had Mr. Layer's assistance in obtaining new counsel – specifically, Ms. Frances Zepeda has been harmed in that she has had to navigate the sometimes treacherous waters of chapter 13 bankruptcy *pro se*;[11] (c) that the Chapter 13 Trustee, the court and its staff, and the Clerk and her staff have been harmed by having expended valuable resources on the matters concerning Mr. Layer; (d) that the prior sanctions levied by this court on Mr. Layer have apparently had little effect such that the court must be creative and more stringent in imposing sanctions so that they will, this time, have the appropriate coercive effect; (e) that Mr. Layer has testified that he is of limited financial resources such that the ordered repayment of attorney's fees has worked a measure of hardship on him; (f) that, notwithstanding Mr. Layer's limited financial resources, the total amount of

---

[11] The court notes that, despite this hardship, Ms. Frances Zepeda has been successful in protecting her home in connection with the Nationstar Lift Stay Motion in that, after an evidentiary hearing in which Ms. Zepeda represented herself *pro se*, the court declined to lift the stay.

attorney's fees to be disgorged is $1,082.52, which, compared to the financial burdens and hardships of his former clients, is a relatively small amount; (g) that Mr. Layer has been previously sanctioned by other courts in the Northern District of Texas for conduct similar to that observed by this court to little effect; (h) that Mr. Layer has certain medical problems and is seeking treatment; (i) that Mr. Layer expressed some remorse for his actions before this court but denies any real wrongdoing on his part; (j) that Mr. Layer asserts that he did not disobey the court's order out of ill will; and (k) that notwithstanding the absence of ill will on Mr. Layer's part, Mr. Layer's disregard of this court's orders and directives was willful in that he knew what was required of him and he chose not to do what was required of him.

76. The court, therefore, finds that a many-pronged sanction with very specific requirements and deadlines for Mr. Layer is appropriate under the circumstances to ensure further compliance with this court's orders and directives.

Accordingly, based upon the foregoing findings of fact and conclusions of law, it is hereby

**ORDERED** that this court finds Phillip E. Layer to be in civil contempt of this court; and it is further

**ORDERED** that Phillip E. Layer shall pay to the Clerk of the Court the sum of $500.00 as sanction for his civil contempt within ten (10) days of the entry of this order; and it is further

**ORDERED** that Phillip E. Layer shall attend five (5) hours of ethics continuing legal education and shall provide proof of such attendance to this court on or before December 30, 2007; and it is further

**ORDERED** that Phillip E. Layer's one-year bar from practice before the United States Bankruptcy Court for the Northern District of Texas which was set forth in the August 4, 2006 Order Imposing Sanctions, is extended for a period of six additional months; and it is further

**ORDERED** that Phillip E. Layer shall disgorge fees in the amount of $224.35 to Armando Rodriguez by December 30, 2007 by making equal monthly payments to Armando Rodriguez on the 30th day of every month beginning August 30, 2007 and shall, to that end, execute a promissory note to Armando Rodriguez in the amount of $224.35 with such payment terms as ordered herein; and it is further

**ORDERED** that Phillip E. Layer shall disgorge fees in the amount of $500.00 to Victor and Juanita Humphrey by December 30, 2007 by making equal monthly payments to Victor and Juanita Humphrey on the 30th day of every month beginning August 30, 2007 and shall, to that end, execute a promissory note to Victor and Juanita Humphrey in the amount of $500.00 with such payment terms as ordered herein; and it is further

**ORDERED** that Phillip E. Layer shall disgorge fees in the amount of $358.17 to Tonia Edwards by December 30, 2007 by making equal monthly payment to Tonia Edwards on the 30th day of every month beginning August 30, 2007 and shall, to that end, execute a promissory note to Tonia Edwards in the amount of $358.17 with such payment terms as ordered herein; and it is further

**ORDERED** that Phillip E. Layer shall, within thirty (30) days of the entry of this order, file with the court in this Miscellaneous Proceeding and provide to the Chapter 13 Trustee proof of having entered into the above-ordered promissory notes with Armando Rodriguez, Victor and Juanita Humphrey, and Tonia Edwards; and it is further

**ORDERED** that Phillip E. Layer shall, on or before December 30, 2007, file with the court in this Miscellaneous Proceeding and provide to the Chapter 13 Trustee proof of having disgorged and paid over the sums ordered above to Armando Rodriguez, Victor and Juanita Humphrey, and Tonia Edwards; and it is further

**ORDERED** that the Clerk of the Court is directed to send a copy of this order and the transcript of the hearing held before this court on May 31, 2007 in this Miscellaneous Proceeding to the Office of the Chief Disciplinary Counsel of the State Bar of Texas; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this order on Phillip E. Layer at 13410 Preston Road, Suite 1-118, Dallas, Texas 75240; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this order on T. William McIntyre at 5001 Spring Valley Road, Suite 400 East, Dallas, Texas 75081; and it is further

**ORDERED** that the Clerk of the Court serve a copy of this order on the following debtors, and counsel of record (if any), at their addresses as reflected by the docket sheets in each of their cases:  Victor and Juanita Humphrey, Case No. 06-31258-SGJ-13; Stevon Scott, Case No. 06-30889-HDH-13; Armando Rodriguez, Case No. 06-31170-BJH-13; Tonia Edwards, Case No. 06-31190-SGJ-13; Shelia McLamore, Case No. 06-32287-HDH-13; and Frances Zepeda, Case No. 06-30845-SGJ-13; and it is further

**ORDERED** that this court retains jurisdiction to construe and enforce this order; and it is further

**ORDERED** that any party in interest that has information concerning noncompliance with this order may file with the court a notice of such noncompliance, in which case the court shall consider stricter measures to be imposed upon Phillip E. Layer.

**###END OF ORDER###**